## ROUTH v. SANDERS.—199 S. W. (2d) 461.

Middle Section.   October 26, 1946.

Petition for Certiorari denied by Supreme Court, January 17, 1947.

Rehearing denied by Supreme Court, April 12, 1947.

Judson Harwood and Bass, Berry & Sims, all of Nashville, for appellant.

Ferriss C. Bailey and A. Lawson Davis, both of Nashville, for appellee.

HOWELL, J. The bill in this case was filed to recover from the defendant the sum of $2,000 as damages for the breach of a contract to insure the property of the complainant which was stored in the warehouse of the defendant in Nashville and which was damaged by fire while so stored. The answer of the defendant denied that he was at any time obligated to procure insurance upon the property of complainant.

The cause was heard by the Chancellor upon oral testimony by stipulation of counsel and the bill was dismissed.

The complainant has perfected an appeal and has filed assignments of error.

The Chancellor did not find the facts as is required by Section 10620 and 10621 of the Code of Tennessee. See Hicks v. Hicks, 168 Tenn. 539, 79 S. W. (2d) 802; Provident Life & Accident Insurance Co. v. Globe Ind. Co., 156 Tenn. 571, 2 S. W. (2d) 1057.

Previous to August 4, 1945, the complainant, an employee of the Sunday School Board of the Southern Baptist Convention, was living in Oklahoma City, Oklahoma, and about that time he was transferred by his employer to Nashville.

On August 4, 1945, the employer, The Sunday School Board, through its business manager, H. E. Ingraham, wrote the defendant asking that he get in touch with the complainant in Oklahoma and complete arrangements to move his household goods to Nashville and store them until complainant could find a house. The last sentence in this letter is:

"Please communicate with him, work the matter out to your mutual satisfaction and send us the bill at the regular rate."

On August 13, 1945, the defendant wrote complainant at Oklahoma City, and among other things said:

"In this connection we call your attention that your furniture carries a release value in case of accident at $.30 per pound. This does not cover acts of God and I would suggest to you that you place additional insurance which we can furnish at the very low rate of $.25 per 100 and $2.50 per 1000. This can be carried in any amount commensurate with the value of your goods.

"I would suggest that you let us know if you wish this done. If there is any information that you desire we you may write or get in touch with Mr. Ingraham."

The complainant answered this letter on August 18 and in the last paragraph of his letter said:

"I am sure that it will be satisfactory with the Sunday School Board for adequate insurance to be carried. I believe $2,000.00 would cover the furniture and household goods."

The defendant then moved the goods of complainant to Nashville and stored them in his warehouse.

The defendant on September 3, 1945, caused an "Advice of Insurance" to be issued No. A 607 890, signed by defendant as agent for the Allied Van Lines, Inc., to the effect that insurance had been effected with the Fireman's

Fund Insurance Company for $2,000 upon these goods as the property of complainant. This Certificate contained a clause as follows:

"When temporary storage is contracted. for with the carrier, this policy includes coverage on the goods during such temporary storage but for not exceeding sixty (60) days."

The premium for this insurance was included in the bill for moving and storage, all of which was charged to the Sunday School Board and paid by it.

This Advice of Insurance was not delivered by the defendant to the complainant, but was held in the files of the defendant for the reason that the defendant's business manager did not know the Nashville address of the complainant and he was keeping these papers expecting Mr. Ingraham to call for them. Thus the matter remained without any notice either to complainant or Mr. Ingraham who had paid the expenses for complainant, until after the sixty days elapsed when, on November 15, a fire occurred in the warehouse of the defendant and complainant's goods were damaged. Neither the complainant nor Mr. Ingraham were informed of the limitation of sixty days on the insurance or that it was about to or had expired. The complainant had arranged with the defendant to have his household goods removed from storage to his home on November 16. There being no material controversy as to the facts, the question for determination is whether or not there was an implied agreement on the part of the defendant to keep complainant's goods insured while in storage.

We are of the opinion that a fair and reasonable construction of the two letters of August 13 and August 18, justifies the conclusion that there was an implied agreement on the part of the defendant to effect insurance

upon this property of the complainant, and to notify the complainant of the term of such insurance or that it was about to expire. The storage was for an indefinite period and under the facts here shown the complainant was justified in presuming that the defendant had procured and kept such insurance in force.

In this cause the representative of the defendant was the agent of the complainant in effecting insurance upon the goods in question and it was his duty to deliver the certificate of insurance to complainant or notify him of its terms. It cannot be said that the complainant was negligent. He had approved the bill dated September 10, 1945, and it had been paid. This bill included the insurance premium and complainant was justified in believing that his property was insured.

In 67 Corpus Juris, paragraph 111 on page 511, is the following:

"Insurance Procured by Warehouseman.—Duty of Warehouseman to Procure Insurance—In General. In the absence of contrary statute or of an agreement, express or implied, a warehouseman is under no duty to keep stored goods insured; but he is under a duty to effect insurance where he has expressly or impliedly contracted to do so, and an agreement to procure insurance on the stored goods may be implied from the circumstances such as the warehouseman's making of a charge for insurance or a previous course of dealing between the parties to effect insurance through the warehouseman, although the depositor's mere request that the warehouseman procure fire insurance may not of itself be sufficient to devolve upon him the duty of doing so."

In the interesting and lengthy opinion of Judge Lurton in the case of Lancaster Mills v. Merchants' Cotton-Press

Co. in 89 Tenn. 1, on page 55, 14 S. W. 317, on page 330, 24 Am. St. Rep. 586, it is said:

"A contract to carry insurance, or to cover with insurance, or a representation to a depositor that his deposit is insured, is very different in its legal effect from the absolute liability of an insurer. In the latter case the action would be upon the risk or policy for the value of the property destroyed, if within the amount of the risk. In the other cases the action would be for such damages as resulted from breach of the obligation to carry insurance."

In the case of Glisson v. Stone, 4 Tenn. App. 71, on page 79 the Court said:

"In the last place, defendant insists that the complainant was also negligent, and for that reason cannot recover. Under the circumstances of this transaction we do not think this doctrine applies. If he had received the policy and failed to read it, as between complainant and the insurance company, the rule could no doubt be invoked, but considering that the defendant was acting for complainant; that complainant relied on the defendant who had much more knowledge as to the matter in hand than complainants, the hurry and lack of opportunity for examination when it was signed and the difficulty of an amateur understanding such a paper suddenly, not to mention the fact that it was not filled up until afterwards, when Stone could take all the time he wanted, but Glisson did not see the application again, we think the court cannot be required to hold complainants estopped and deny them relief on this ground."

We are therefore of the opinion that under the facts of this case there was an implied contract by which defendant was obligated to keep the property of complainant insured while in his possession and he having

failed to do so is liable to the complainant for his breach of duty to the amount of the loss sustained.

The assignments of error are sustained, the decree of the Chancellor is reversed and the cause remanded to the Chancery Court of Davidson County for the ascertainment of the amount of damages sustained by the complainant.

The defendant will pay the costs of the cause.

Reversed and remanded.

Felts and Hickerson, JJ., concur.