**WEST TENNESSEE AGAPE, INC.,**
Appellee,

v.

**Karon D. LIPE, Sr., et al., Appellants.**

Court of Appeals of Tennessee,
Western Section.

June 17, 1974.

Certiorari Denied by Supreme Court
Nov. 4, 1974.

Thomas J. Griffin, Memphis, for appellants.

Larry D. Austin, Memphis, for appellee.

NEARN, Judge.

The Juvenile Court of Memphis and Shelby County decreed that the three minor children of Karon and Donna Lipe had been abandoned within the meaning of T.C.A. §§ 37–202, 37–203 and forever terminated the parental rights of the natural parents. That decision was appealed to the Circuit Court of Shelby County where the matter was heard *de novo*, T.C.A. § 37–258. The Circuit Court affirmed the order of the Juvenile Court and the matter has been appealed to this Court for review *de novo*. T.C.A. § 27–303.

The controlling Assignment of Error is as follows:

"The Court erred in finding that the Appellants had wilfully failed to visit and or support their children or make payments toward their support during the four month period preceding March 1, 1973."

It should first be noted that this is not an adoption proceeding. This is a proceeding in a Court of special jurisdiction, the Juvenile Court, to terminate parental rights under the 1970 Public Acts (Adj.S.) ch. 600, as amended and now codified as T.C.A. §§ 37–201 to 37–281. This distinction must be borne in mind as the term

"abandonment" as used in adoption proceedings is subject to a different order of proof from that when used in a hearing in the Juvenile Court on a petition to have a child declared abandoned and terminate parental rights pursuant to T.C.A. § 37–201 et seq. This distinction has been noted in Ex parte Wolfenden (1959 M.S.) 49 Tenn.App. 1, 349 S.W.2d 713. Also, the Legislature has recognized the distinction between abandonment as defined in T.C.A. § 37–202 governing proceedings in the Juvenile Court and when used in adoption proceedings in the Chancery and Circuit Court. Section 37–203(2) governing matters in the Trial Court provides:

"All cases to terminate parental rights when a child is found to have been abandoned for four (4) consecutive months immediately preceding institution of an action or proceeding to declare the child to be an abandoned child, except that this does not deprive circuit and chancery courts of the right to adjudicate an abandonment where abandonment has been alleged in a petition to adopt as is provided in chapter 1 of title 36."

We conclude that the Juvenile Court, since it is a statutory Court of special or limited jurisdiction, is limited in its determination of abandonment by the words of the statutes giving it such jurisdiction. It may not determine an abandonment on the broader principles involved in an adoption proceeding.

Section 37–202 contains the definition of terms as used in Juvenile Court proceedings. Subsection (7) defines an abandoned child as:

" 'Abandoned child' means a child whose parents or other persons lawfully charged with his care and custody willfully fail to visit or willfully fail to support or make payments toward his support for a period of four (4) consecutive months."

Section 37–203(2) grants jurisdiction to the Juvenile Court in "All cases to terminate parental rights when a child is found to have been abandoned for four (4) consecutive months immediately preceding institution of an action or proceeding to declare the child to be an abandoned child" etc.

Section 37–208 T.C.A. defines the commencement of proceedings and provides that actions of the sort now under consideration are commenced "by the filing of a petition".

Facts which are undisputed in this case are:

(a) The children of the defendant parents were in the temporary custody of West Tennessee Agape Inc. at the time the petition to terminate parental rights was filed.

(b) The parents were woefully in arrears in making payments to the Juvenile Court for the support of the children. (The reasons therefor pro and con, need not here be expressed.)

(c) On February 22, 1973, the parents paid to the Juvenile Court the sum of $36.00 as support for the children representing four weekly payments of $9.00 each. (It had been almost nine months since a previous payment was made and the $36.00 payment was most probably motivated by the parents becoming aware of the petitioner's intent to attempt to terminate parental rights.)[1]

(d) In December, 1972 the parents attempted to have their children visit in their home, but permission was refused by petitioner on the grounds that Christmas arrangements had already been made for the children in a foster home and it would be disturbing for the children.

(e) The petition to terminate parental rights was drawn up and signed by peti-

[1]. Pending the hearings below and this appeal the parents have either paid or attempted to pay additional sums which have been refused.

tioner on February 22, 1973, but not filed until March 1, 1973.

■ From the foregoing undisputed facts it may be perceived that the parents (1) attempted to visit the children within a four month period prior to the filing of the petition and (2) made support payments within that four month period.

While it is true that the definition of an "abandoned child" requires that the parents fail to visit or support the child for any period of four consecutive months, § 37–203 T.C.A. gives the Juvenile Court jurisdiction to terminate parental rights only in those cases where that failure exists "for four (4) consecutive months *immediately preceding* institution of the action or proceeding to declare the child to be an abandoned child".

Facts which are undisputed in this case show that the failure did not exist four months immediately preceding the filing of the petition.

We must either bend the meaning of the words "immediately preceding" or hold they are meaningless in order to affirm the lower Courts. We can do neither.

■ As previously pointed out, we are not here dealing with a Court of inherent jurisdiction but one of statutory jurisdiction. The Juvenile Court was unknown at common law and can only exercise such jurisdiction as conferred by statute. State

v. Bomar (1962) 210 Tenn. 249, 358 S.W. 2d 295.

■ Section 37–203 T.C.A. contains no ambiguity as far as we can see. The language thereof is plain and clear and we must interpret it as written, that is, the causes for a declaration of abandonment in order to terminate parental rights must have existed for four consecutive months immediately preceding the filing of the petition. In this case, the situation did not exist for that period and the lower Courts erred in granting the petition.[2]

It is not our opinion that this construction is in the least harsh. We think Judge Shriver put it admirably in the second reported *Wolfenden* case, 48 Tenn.App. 433, 348 S.W.2d 751 (1961 M.S.) when he observed:

> "We agree also that it is one thing to say that a person's actions have been 'such that a child cannot stay under his roof, but it is quite another thing to say that his actions are such that the Court by decree says, 'This is no longer your child.' "

The result is that the judgments of the Circuit Court and the Juvenile Court are reversed and this petition of the West Tennessee Agape to terminate parental rights is dismissed.

Costs below and of appeal are adjudged against West Tennessee Agape.

CARNEY, P. J., and MATHERNE, J., concur.

---

2. The jurisdiction of the Circuit Court on appeal from the Juvenile Court was only co-extensive and was not greater than the Juvenile Court. See and compare Flanagan v. Grocery Company (1897) 98 Tenn. 599, 40 S.W. 1079.